Opinion
 

 WARD, J.
 

 A jury found defendant Mark Anthony Cline guilty of grand theft (Pen. Code, § 487, subd. (a))
 
 [1]
 
 and commercial burglary (§ 459). In a bifurcated proceeding, the jury also found true the allegations of 12 prior strike felony convictions (§ 667, subds. (b)-(i)) and 2 prior prison term convictions (§ 667.5, subd. (b)). The court sentenced him to 25 years to life for the grand theft conviction and to a consecutive 1-year enhancement for each of the prior prison term convictions. In addition, the trial court imposed a concurrent sentence of 25 years to life for the burglary conviction.
 

 On appeal, defendant contends the trial court erred in denying his request for a unitary trial on the current offenses and strike allegations; section 654 requires that the prison term for one count be stayed; the trial court abused its discretion by refusing to strike one or more of the prior conviction allegations; the sentence imposed constitutes cruel and unusual punishment; and defendant’s twelve prior strikes were not brought and tried separately and therefore do not count as individual strike priors. The People concede
 
 *1332
 
 that section 654 requires the sentence for one count to be stayed. We find no other error.
 

 Facts
 

 In December 1995, a loss prevention agent at the Harris Department Store in San Bernardino saw defendant enter the store, approach two clothing racks, and remove price tickets from several items. Defendant discarded the price tickets, pulled a bag with the logo of another store out of his pocket, and placed the items into the bag. Defendant then left the store without paying for the items.
 

 The loss prevention agent and a mall security attendant approached defendant and asked about the merchandise. Defendant said he had paid for the items, and he resisted efforts to handcuff him. He did not have any money or credit cards with him. The value of the items defendant had removed from the store was about $648.
 

 Discussion
 

 I.
 
 Defendant Had No Right to a Unitary Trial
 

 A.
 
 The Prosecution’s Motion for a Bifurcated Trial
 

 Before trial, defendant informed the court he wished to have the prosecution prove the truth of the prior conviction allegations as part of the prosecution’s case-in-chief. When defendant’s counsel informed the court that defendant would not testify at trial, the prosecution moved to bifurcate the proceedings. The prosecutor explained, “What [the defense] basically asking for is jury nullification. It’s within the Court’s jurisdiction regardless of who is asking for it to bifurcate those issues. [¶] I don’t want to confuse the jury or to cause some conflict between the jurors’ ultimate decision and the court instructions. [¶] So I’d ask to bifurcate the priors.”
 

 Defense counsel responded, “I believe again, it’s my understanding that it’s the responsibility of the district attorney to prove both their case-in-chief as well as the special allegations. I don’t believe that we’re asking for a jury nullification.”
 

 The court granted the motion to bifurcate, citing
 
 People
 
 v.
 
 Calderon
 
 (1994) 9 Cal.4th 69, 79 [36 Cal.Rptr.2d 333, 885 P.2d 83]. The court explained, “The only two considerations for this Court to consider are the
 
 Calderone
 
 [sic] case with the question of prejudice in this particular case and
 
 *1333
 
 the statements from [the prosecutor] that the prejudice may or would be to the People which is the prospect of jury nullification. [¶] The jury nullification is not codified in anyway in California. In fact, the jury is directed to follow the law. And in doing so, would not be allowed to consider jury nullification. But this Court has had the experience of effective jury nullification in cases that I’ve tried. Where a matter was brought before the jury, and the jury reached a verdict not guilty
 
 [sic].
 
 [¶] And on inquiry afterwards, the jury indicated that they in effect, even though not instructed on jury nullification, were nullifying the law because of the allegations of the priors being read. [¶] They in fact determined that it was in fact a strike case, and they were not going to follow the law.” The court concluded, “Balancing the prejudicial effect that would be based upon the Court’s personal experience [of apparent jury nullification in other cases], ... the Court would grant the People’s request to bifurcate the issues of the crimes of the priors.”
 

 Defendant contends the trial court abused its discretion in granting the People’s request for a bifurcated trial.
 

 B. A
 
 Trial Court Has the Discretion Under Section 1044 to Bifurcate the Trial
 

 In
 
 People
 
 v.
 
 Calderon, supra, 9
 
 Cal.4th at page 72, the California Supreme Court held that “. . .a trial court has the discretion, in a jury trial, to bifurcate the determination of the truth of an alleged prior conviction from the determination of the defendant’s guilt of the charged offense, but is not required to do so if the defendant will not be unduly prejudiced by having the truth of the alleged prior conviction determined in a unitary trial.”
 

 Under section 1025, when a defendant pleads not guilty and denies the truth of a prior conviction allegation, “the question whether or not he has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty . . . .” The court in
 
 People
 
 v.
 
 Calderon, supra, 9
 
 Cal.4th 69, explained that section 1025 neither expressly authorizes nor prohibits bifurcation of trial of the prior conviction allegations. (9 Cal.4th at p. 74.) However, “[g]eneral authority to bifurcate trial issues may be found ... in section 1044, which vests the trial court with broad discretion to control the conduct of a criminal trial: ‘It shall be the duty of the judge to control all proceedings during the trial. . . with a view to the expeditious and effective ascertainment of the truth regarding the matters involved.’ [Citation.] ‘The object of a trial is to ascertain the facts and apply thereto the appropriate rules of law, in order that justice within the law shall be truly administered. It is not only the right but the duty of a trial judge to so supervise and regulate the course of a trial that the truth shall be revealed
 
 *1334
 
 in so far as it may be, within the established rules of evidence.’ [Citation.]”
 
 (Id.
 
 at pp. 74-75.)
 

 We conclude a trial court has discretion under section 1044 to grant a motion for bifurcation regardless of whether the motion was brought by the defendant or by the People.
 

 C.
 
 Standard of Review
 

 In exercising its discretion under section 1044, a trial court must be impartial and must assure that a defendant is afforded a fair trial.
 
 (People
 
 v.
 
 Blackburn
 
 (1982) 139 Cal.App.3d 761, 764 [189 Cal.Rptr. 50].) When there is no patent abuse of discretion, a trial court’s determinations under section 1044 must be upheld on appeal.
 
 (People
 
 v.
 
 Calderon, supra,
 
 9 Cal.4th at p. 79.)
 

 D.
 
 The Trial Court Did Not Abuse Its Discretion in Granting the People’s Motion for a Bifurcated Trial
 

 Although no published case of which we are aware has discussed a motion for bifurcation brought by the People, many cases have discussed the factors that should guide a trial court’s discretion when ruling on such a motion brought by the defendant. Courts have acknowledged the “serious danger” (see, e.g.,
 
 People
 
 v.
 
 Thompson
 
 (1988) 45 Cal.3d 86, 109 [246 Cal.Rptr. 245, 753 P.2d 37]) or the “significant risk”
 
 (People
 
 v.
 
 Calderon, supra, 9
 
 Cal.4th at p. 76) to the defendant from having a jury determine the truth of a prior conviction allegation during the same proceeding in which it is charged with determining the defendant’s guilt on a current charge. The
 
 Calderon
 
 court made clear the trial court’s decision should be guided by the specific circumstances of the case before it.
 
 (Calderon, supra,
 
 at pp. 79-80.)
 

 Here, the court noted that it had presided over two trials in which the jury apparently had refused to follow the law and had found the defendants not guilty of offenses falling under the three strikes law. These circumstances are not specific to the current case, and we do not mean to suggest that a trial court can grant a prosecutor’s motion for bifurcation merely on a generalized concern that a jury might exercise nullification. However, the court was also entitled to consider the prejudice to the defendant from having the jury learn of his 12 prior convictions in a unitary trial. There was no abuse of discretion.
 

 E.
 
 A Defendant Has No Constitutional Right to a Unitary Trial
 

 Defendant contends the trial court violated his constitutional rights by bifurcating the trial. The United States Supreme Court has ruled that a
 
 *1335
 
 unitary trial does not deny a criminal defendant due process of law, but further suggested that a bifurcated trial is often more fair.
 
 (People
 
 v.
 
 Calderon, supra, 9
 
 Cal.4th at p. 75, citing
 
 Spencer
 
 v.
 
 Texas
 
 (1967) 385 U.S. 554, 567-569 [87 S.Ct. 648, 655-656, 17 L.Ed.2d 606, 616-617].) Certainly, therefore, a defendant has no constitutional right to a unitary trial.
 

 Moreover, a defendant has no constitutional right to have the jury, rather than the court, determine the truth of a prior conviction allegation.
 
 (People
 
 v.
 
 Vera
 
 (1997) 15 Cal.4th 269, 281 [62 Cal.Rptr.2d 754, 934 P.2d 1279].) As the court noted in
 
 Calderon,
 
 “At least half the states, as well as the federal government and the District of Columbus, avoid [the issue of prejudice to the defendant from a unitary jury trial] by having the court, rather than a jury, determine the truth of alleged prior convictions.”
 
 (People
 
 v.
 
 Calderon, supra, 9
 
 Cal.4th at p. 76.)
 

 We conclude the bifurcated trial did not violate any constitutional rights of defendant.
 

 F.
 
 A Defendant Has No Right to Jury Nullification
 

 Defendant argues that the bifurcated proceeding deprived him of a right to jury nullification. Courts have long recognized that “a jury, in rendering a general verdict in a criminal case, necessarily has the naked
 
 power
 
 to decide all the questions arising on the general issue of not guilty; but it only has the
 
 right
 
 to find the facts, and apply to them the law as given by the court.”
 
 (People
 
 v.
 
 Lem You
 
 (1893) 97 Cal. 224, 228 [32 P. 11], second italics added, overruled on another ground in
 
 People
 
 v.
 
 Kobrin
 
 (1995) 11 Cal.4th 416, 427, fn. 7 [45 Cal.Rptr.2d 895, 903 P.2d 1027].) Because juries have no right to disregard the court’s instructions, it is inappropriate to instruct juries on their power to nullify the law.
 
 (People
 
 v.
 
 Nichols
 
 (1997) 54 Cal.App.4th 21, 24-26 [62 Cal.Rptr.2d 433].)
 

 Moreover, as noted above, the Constitution does not require a jury trial for sentence enhancement allegations. Thus, defendant’s assertion that he had a right to the possibility of jury nullification is unsupported.
 

 G.
 
 Defendant Cannot Show Prejudice From a Bifurcated Trial
 

 Even if the trial court abused its discretion in bifurcating trial of the prior conviction allegations, no prejudice can be shown; in order to find prejudice, we would have to find a reasonable likelihood that, absent error, the outcome of the case would have been more favorable.
 
 (People
 
 v.
 
 Watson
 
 (1956) 46 Cal.2d 818 [299 P.2d 243].) In other words, we would have to find it
 
 *1336
 
 reasonably likely that a properly instructed jury would have ignored the instructions to acquit defendant of the current charges so as to prevent the imposition of a three strikes sentence. To the contrary, we are required to presume that the jury understands and follows the instructions it is given.
 
 (People
 
 v.
 
 Danielson (1992) 3
 
 Cal.4th 691, 722 [13 Cal.Rptr.2d 1, 838 P.2d 729].) Here, moreover, the jury apparently was aware that this case arose under the three strikes law, because it sent the court a note to that effect during deliberations on the prior conviction allegations. Nonetheless, the jury did not exercise its power to nullify the law by finding the prior conviction allegations not true. Defendant has not explained why the jury, given the same information in a unitary proceeding, would have been more disposed to nullify the law at that time.
 

 H.
 
 One of Defendant’s Sentences Must Be Stayed Under Section 654
 

 The trial court imposed concurrent sentences of 25 years to life for the grand theft and commercial burglary convictions. The People concede that because both convictions arose from an indivisible course of conduct, the sentence for one of the convictions must be stayed under section 654.
 
 (People
 
 v.
 
 Bernal
 
 (1994) 22 Cal.App.4th 1455, 1458 [27 Cal.Rptr.2d 839].) We shall order the abstract of judgment to be corrected accordingly.
 

 III.
 
 The Trial Court Did Not Abuse Its Discretion by Refusing to Strike One or More of Defendant’s Prior Convictions
 

 Defendant moved for the trial court to strike one or more of his prior convictions; the trial court denied the motion. Defendant now contends the trial court abused its discretion in refusing to strike one or more of his prior convictions.
 

 The grounds for defendant’s motion were that imposition of a sentence of 25 years to life “would not be in the interests of justice because the facts of this case do not justify the imposition of such a sentence upon the defendant nor do they warrant such a financial burden upon the taxpayers of this state.” In denying the motion, the trial court stated, “So ever since I have had the occasion to sentence defendants under the three strikes law, I’ve always considered the factors set down in Penal Code Section 1385. [¶] In looking at the probation report, [defendant] has a 1987 Los Angeles burglary conviction where he has spent time in prison, and in ’88 he picked up his 12 strikes which resulted in an eight-year prison commitment. In 1994 he picked up another burglary conviction and went back to prison. [¶] This is not a case where under any stretch of the imagination the Court could exercise 1385 in good conscience. Considering the factors outlined in 1385
 
 *1337
 
 and the commentary by the California Supreme Court on how the Court should exercise its discretion under 1385 as it applies to strikes admitted or found true by Court or jury, the Court declines to exercise 1385 discretion and the motion to strike the priors is denied.”
 

 Trial courts retain the power to dismiss prior strikes in the interest of justice under section 1385.
 
 (People
 
 v.
 
 Superior Court
 
 (Romero) (1996) 13 Cal.4th 497, 529-530 [53 Cal.Rptr.2d 789, 917 P.2d 628].) In exercising their discretion under section 1385, trial courts must consider both the defendant’s constitutional rights and society’s interests, as represented by the People. (13 Cal.4th at pp. 530-531.) Courts act improperly if “ ‘guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,’ while ignoring ‘defendant’s background,’ ‘the nature of his present offenses,’ and other ‘individualized considerations.’ [Citation.]”
 
 (Id.
 
 at p. 531.)
 

 Here, the trial court’s statements reflect it focused on the proper considerations. Defendant has been convicted of no less than 14 prior felonies. Although, as he points out, 12 of those convictions arose from a single proceeding, each of the 12 underlying crimes was a separate burglary. Defendant’s prior incarcerations have not succeeded in dissuading him from continuing to offend. The trial court did not abuse its discretion in declining to strike one or more of the prior convictions.
 

 IV.
 
 Defendant’s Sentence Does Not Constitute Cruel and Unusual Punishment
 

 Defendant contends his sentence of 25 years to life for his grand theft conviction constitutes cruel and unusual punishment.
 

 In examining whether a sentence is cruel and unusual under California law, this court: (1) examines the “nature of the offense and/or the offender, with particular regard to the degree of danger both present to society”
 
 (In re Lynch
 
 (1972) 8 Cal.3d 410, 425 [105 Cal.Rptr. 217, 503 P.2d 921]); (2) compares the challenged punishment with punishments prescribed for more serious offenses in the same jurisdiction; and (3) compares the challenged punishment with punishments prescribed for the same offense in other jurisdictions
 
 (People
 
 v.
 
 Dillon
 
 (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697]).
 

 Defendant attempts to characterize his sentence as being based solely on his present crime of grand theft. He notes that no violence was involved in the crime, he did not possess a weapon, the store did not lose any
 
 *1338
 
 money, and he did not make any significant efforts to escape. However, defendant’s punishment was imposed because of his recidivism. In 1988, he was convicted of receiving stolen property, for which he served a local commitment and was placed on probation. That same year, he was convicted of 12 separate residential burglaries, for which he received a prison term of 8 years. He was paroled in 1992, and in 1994, he was convicted of petty theft with a prior theft conviction, for which he received 28 months in prison. He was paroled on October 3, 1995, and committed the current offense just two months later. It is apparent from this record that incarceration has not deterred him from committing more crimes.
 

 The next step in the
 
 Lynch
 
 analysis is to compare defendant’s punishment with punishments in this state for more serious crimes. However, as the court pointed out in
 
 People
 
 v.
 
 Ayon
 
 (1996) 46 Cal.App.4th 385, 400 [53 Cal.Rptr.2d 853], this step is inapposite to three strikes sentencing because it is a defendant’s “recidivism in combination with his current crimes that places him under the three strikes law. Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals, it is illogical to compare [defendant’s] punishment for his ‘offense,’ which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons.”
 
 (Ibid.,
 
 fn. omitted.)
 

 Finally, a comparison of California’s punishment for recidivists with punishment for recidivists in other states shows that many of the statutory schemes provide for life imprisonment for repeat offenders, and several states provide for life imprisonment without possibility of parole. California’s scheme is part of a nationwide pattern of statutes calling for severe punishments for recidivist offenders. (See, e.g.,
 
 People
 
 v.
 
 Ayon, supra,
 
 46 Cal.App.4th at p. 400.)
 

 We conclude that defendant’s punishment was not “ ‘out of all proportion to the offense . . .’ [citation] so as to shock the conscience and offend fundamental notions of human dignity.”
 
 (In re DeBeque
 
 (1989) 212 Cal.App.3d 241, 249 [260 Cal.Rptr. 441].)
 

 V.
 
 Defendant Had 12 Prior Strike Convictions Even Though All the Convictions Arose From the Same Charging Document
 

 In 1988, defendant entered a plea of guilty to 12 residential burglaries with a stipulated term of 8 years in prison. Defendant now contends he had only one prior strike conviction because all twelve burglaries were charged in a single information. After briefing was completed in this case,
 
 *1339
 
 the California Supreme Court decided the case of
 
 People
 
 v.
 
 Fuhrman
 
 (1997) 16 Cal.4th 930, 937-940 [67 Cal.Rptr.2d 1, 941 P.2d 1189], establishing that prior strike felonies need not have been brought and tried separately. Defendant’s contention is therefore meritless.
 

 Disposition
 

 The abstract of judgment shall be corrected to reflect that one of defendant’s sentences of 25 years to life shall be stayed under section 654. In all other respects, the judgment is affirmed.
 

 McKinster, Acting P. J., and Gaut, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied April 15, 1998. Brown, J., was of the opinion that the petition should be granted.
 

 [1]
 

 All further statutory references are to the Penal Code unless otherwise indicated.